James H. ROBINSON, Plaintiff,

v.

Joseph BODOFF, Schechtman Levy & Halperin, Preston Halperin and Does 1 Through 10, Defendants.

No. CIV.A.03–10633 NMG.

United States District Court, D. Massachusetts.

Aug. 2, 2005.

**230**

David Berndt, Law Office of David Berndt, Norton, MA, Justin D. Park, Romero Montague P.S., Bellevue, WA, for James H. Robinson, Plaintiff, Pro Se.

Owen R. O'Neill, Howard, Timson White & O'Neill P.C., Norwood, MA, for Joseph Budoff, Does 1–10, Shechtman Levy & Halperin, Preston Halperin, Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

James H. Robinson ("Robinson") alleges that his former Attorneys, Joseph S.U. Bodoff ("Attorney Bodoff") and Preston Halperin ("Attorney Halperin"), and their law firm, Shectman Levy & Halperin ("SLH") committed malpractice while representing him on several legal matters. The Court has dismissed several claims on motions for summary judgment. Plaintiff now moves for leave to amend the complaint.

### I. *Background*

In 1987, Robinson, together with John Leatham ("Leatham"), formed a corporation, Robinson Leatham and Company, for the purpose of organizing limited partnerships to purchase and operate low-income housing projects. In 1988, John Marbury Nelson IV ("Nelson") became a shareholder of the subject corporation and the name of the company was changed to Robinson, Leatham and Nelson, Inc. ("RLN"). Before long, Robinson discovered that Nelson had been misappropriating RLN's trade secret information for his own use and had failed to transfer to RLN $256,225 in fees that were owed to it. On March 20, 1990, RLN sued Nelson in the United States District Court for the Northern District of California ("the California suit").

During discovery, Robinson came to suspect that Nelson was attempting to conceal his assets in a number of trusts and other entities. On March 28, 1995, Robinson filed suit against Nelson in Middlesex County Probate & Family Court, in Massachusetts, alleging fraudulent conveyance and seeking to avoid certain transfers ("the fraudulent conveyance suit"). RLN was represented in the fraudulent conveyance suit by Attorney Joseph H. Walsh ("Attorney Walsh") who obtained a temporary restraining order preventing Nelson from transferring any of his assets. On June 10, 1996, Nelson moved for summary judgment but the entire action was stayed pending the outcome of an appeal in the California suit.

The preceding October, a jury in the California suit had found Nelson liable and judgment against him was entered for $292,008 together with prejudgment interest at a rate of 10% from January 22, 1990 through August 1, 1995 and post judgment interest at a lesser rate onward ("the California judgment"). Plaintiff appealed and the judgment was affirmed in April, 1997.

In August, 1997, Robinson met with Attorney Bodoff, who was then associated with the law firm of Hinckley, Allen & Snyder ("the Hinckley firm"), to discuss his possible representation of RLN in the fraudulent conveyance suit and with respect to attempts to collect the California judgment. On February 24, 1998, Attorney Bodoff entered his appearance in the fraudulent conveyance suit. At the time, Nelson's motion for summary judgment was pending.

Attorney Bodoff thereafter obtained Nelson's financial records and they were sent to John Chuta ("Chuta"), a forensic accountant, for analysis. Chuta prepared a report in May, 1998 ("the Chuta Report"), allegedly finding inconsistencies between Nelson's tax returns and his personal financial statements.

In June 1998, Attorney Bodoff left the Hinckley firm and joined SLH. He and Robinson signed a new engagement letter. Attorney Preston Halperin ("Attorney Halperin") began assisting Attorney Bodoff with the representation at that time.

On November 17, 1998, Attorney Bodoff received notice that there would be a hearing on Nelson's motion for summary judgment on January 6, 1999. The day before that hearing, Attorneys Bodoff and Halperin filed their opposition papers. At the motion hearing, Nelson argued that Robinson's allegations were deficient because he had failed to identify any specific fraudulent transfer that had taken place. On January 21, 1999, the Probate Court allowed Nelson's motion for summary judgment on the grounds that 1) Robinson had failed to identify any specific fraudulent transfer and 2) additional discovery would not be permitted because Robinson had failed to exercise diligence in pursuing discovery.

Robinson discharged the defendant-attorneys and hired Attorney Tara Richard-son. She appealed the allowance of summary judgment and, while that appeal was pending, settled the case against Nelson for $250,000.

Robinson filed the instant malpractice action on April 7, 2003. The Amended Complaint stated claims for breach of contract (Count I), fraud or misrepresentation (Count II), unfair or deceptive practices pursuant to M.G.L. c. 93A (Count III), legal malpractice (Count V) and civil conspiracy (Count VI). On June 14, 2004, Robinson filed a motion for partial summary judgment on the issue of liability for legal malpractice. On the same day, defendants moved for summary judgment on all counts.

On February 2, 2005, this Court entered a Memorandum and Order denying plaintiff's motion for partial summary judgment and allowing, in part, and denying, in part, defendants' motion for summary judgment. The Court dismissed Counts II (fraud or misrepresentation), III (chapter 93A claim) and IV (civil conspiracy). Counts I (breach of contract) and V (legal malpractice) remain viable.

On February 11, 2005, plaintiff filed a motion for leave to amend the complaint on the basis of his discovery of alleged new information. He states that, on April 27, 2004, plaintiff deposed Attorney Bodoff who testified that "[t]here's one case I can remember at Gaston & Snow. I think we filed a Chapter 7 petition on behalf of the holding company for Boston Trade Bank". Further investigation revealed that, in 1991, Attorney Bodoff assisted the holding company for the Boston Trade Bank ("the BTB holding company") in filing for Chapter 7 bankruptcy.

Plaintiff contends that Attorney Bodoff's prior representation of the BTB holding company presents a conflict of interest with his representation of Robinson be-

cause the Boston Trade Bank was a creditor of Nelson and, as such, "would have an adverse position to Robinson in his efforts to collect his judgment from Nelson". Attorney Bodoff did not disclose his prior representation of the BTB holding company to plaintiff. Plaintiff now seeks to amend the complaint: 1) to add the Hinckley firm as a defendant and 2) to add counts for legal malpractice, fraud, violation of M.G.L. c. 93A and civil conspiracy against Attorney Bodoff and the Hinckley firm.

On June 9, 2005, a hearing was held and the parties (including the Hinckley firm) orally argued in support of their positions. On June 13, 2005, this Court entered an Order requiring additional briefing and the parties have now filed memoranda in response to that Order.

## II. *Legal Analysis*

### A. Legal Standard

In general, "a party may amend the party's pleading only by leave of court ... and leave shall be freely given when justice so requires". Fed.R.Civ.P. 15. Leave to amend must be denied, however, if the amendment would be futile or would reward undue delay. *Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994). Once a motion for summary judgment has been filed, a motion for leave to amend will be allowed only if the plaintiff can provide "substantial and convincing evidence" in support of the amendment. *Id.*

In this case, both parties moved for summary judgment on June 14, 2004 and plaintiff's motion for leave to amend was not filed until February 11, 2005. Thus, the plaintiff's motion will be scrutinized in accordance with the "substantial and convincing evidence" standard. *Id.* The fact that the plaintiff did not discover the facts underlying his proposed amendment until after commencement of the case does not

alter that conclusion because the facts underlying the subject amendment were discovered on April 27, 2004, six weeks before motions for summary judgment were filed and nine months before a decision was rendered.

### B. Analysis

Plaintiff's proposed claims are based upon the allegation that Attorney Bodoff was laboring under a conflict of interest which the defendants failed to disclose. Plaintiff contends that there was a conflict of interest under *Massachusetts Rules of Professional Conduct*, Rule 1.9 and that Attorney Bodoff had a "continuing" duty to disclose to the FDIC any assets of Nelson's which he might uncover. Thus, plaintiff alleges that Attorney Bodoff had conflicting duties and loyalties at the time he represented Robinson.

#### 1. *The Existence of a Conflict of Interest*

The current version of *Massachusetts Rules of Professional Conduct*, Rule 1.9., which is substantially the equivalent of the version then in effect, provides:

[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

*Id.* Under the Rule, a conflict exists only if the two matters are "substantially related". *Id.*

Here, they are not. The sole commonality between the representations was that Nelson is a debtor of both the FDIC, as successor to the BTB, and Robinson. The representations were factually distinct (i.e. a bankruptcy filing involving a bank as

233

compared to an attempt to collect a judgment obtained in a misappropriation lawsuit). They were also legally distinct (Chapter 7 of the Bankruptcy Code as opposed to the Massachusetts fraudulent conveyance law).

More importantly, as the Hinckley firm points out, Attorney Bodoff did not represent the Boston Trade Bank, he represented the BTB holding company. Robinson continually fails to recognize or acknowledge the difference between the two entities and offers no justification for such failure. The BTB and the holding company are, nevertheless, distinct corporate entities and, in the absence of evidence to the contrary, representation of one does not equal representation of the other. There is no conflict of interest under Rule 1.9 between Bodoff's prior representation of the BTB holding company and his representation of Robinson.

Plaintiff also argues that Attorney Bodoff had a "continuing" duty to inform the FDIC of newly-discovered assets belonging to Nelson. Plaintiff makes a valiant effort to extract that supposed duty from three sources.

First, he argues that *Massachusetts Rules of Professional Conduct,* Rule 1.6(b) establishes a continuing duty of disclosure. Rule 1.6(b) provides that:

> a lawyer may reveal, and to the extent required by Rule 3.3, Rule 4.1(b), or Rule 8.3 *must* reveal, [confidential] information . . . to prevent the commission of a criminal or fraudulent act.

(emphasis in original). Plaintiff argues that, had Attorney Bodoff discovered a concealment of assets, he would have been obliged to disclose it. As the Hinckley firm contends, however, that is a duty owed to the citizenry, not to a former client. Attorney Bodoff was not in a unique, ethical position; any lawyer representing Robinson who discovered fraud or criminal activity would have been obligated to report it.

Second, plaintiff contends that bankruptcy attorneys, as officers of the court, are required to disclose the existence of any concealed assets. The Court need not consider whether such a duty, if it exists, overrides the duty of confidentiality owed to one's client because plaintiff's argument is deficient for the same reason his previous argument was. To the extent there is an obligation to report fraud to the court, it is a general obligation of all attorneys. Attorney Bodoff occupied no special position and did not have a heightened duty to report uncovered assets belonging to Nelson.

Finally, plaintiff cites 12 C.F.R. § 366.12(c). Part 366 is entitled "Minimum Standards of Integrity and Fitness for an FDIC Contractor" and § 12 is entitled "What are the FDIC's Minimum Standards of Ethical Responsibility?" Subsection (c) provides that "[y]ou must disclose to us waste, fraud, abuse or corruption. Contact the Inspector General at 1–800–964–FDIC". That provision is inapplicable to this case because Attorney Bodoff did not represent the FDIC and, in any event, it is unclear whether the rule is addressed to *former* FDIC contractors. *See* 12 C.F.R. § 366.1 ("This part establishes the minimum standards of integrity and fitness that contractors . . . must meet if they perform any service or function on our behalf.").

Accordingly, plaintiff has failed to allege that there was a conflict of interest or that Attorney Bodoff had a greater "continuing" duty of disclosure than any other officer of the court. Plaintiff's proposed claims would, therefore, be dismissible for failure to state a claim and permitting him to amend the complaint would be futile. *See* Fed.R.Civ.P. 15.

### 2. *Causation and Damages*

■ Plaintiff's proposed claims have another dispositive shortcoming. To succeed on them, plaintiff would also need to establish that the conflict of interest caused him damage. *See McCann v. Davis, Malm & D'Agostine*, 423 Mass. 558, 669 N.E.2d 1077 (1996). The existence of a conflict without proof of causally-related damage is insufficient. *Id.*

Plaintiff has not sufficiently alleged that he suffered damages as a result of the alleged conflict of interest and common sense indicates that such damage could not occur. The primary purpose of Rule 1.9 of the Massachusetts Rules of Professional Conduct is to prevent prejudice to the *former* client, here the BTB holding company. *See* Rule 1.9 (prohibiting representation which is "adverse" to a former client "unless the former client consents after consultation"). To the extent that Rule 1.9 is designed to protect confidentiality, only the former client's interests are jeopardized by a conflict of interest, which is why the Rule requires only the consent of the former client.

A conflict of interest between a present and former client could, in principle, erode the attorney's loyalty to the present client. Obviously, however, Attorney Bodoff's loyalty to Robinson could only have been adversely influenced by the alleged conflict if Attorney Bodoff was aware of it. Therefore, in order to find damages, one would have to indulge a chain of inferences that 1) Attorney Bodoff was aware of a conflict of interest which 2) he chose not to disclose and 3) instead, provided inadequate representation to Robinson, 4) thus benefiting Nelson's other creditors. Plaintiff offers no evidence, let alone "substantial and convincing" evidence, to support that chain of inferences.

There is no evidence that Attorney Bodoff harbored any loyalty to the Boston Trade Bank or the FDIC, neither of which were ever his clients. There is no indication that Attorney Bodoff believed, or had reason to believe, a conflict of interest existed. Because there is no evidence of the least disloyalty on the part of Attorney Bodoff, there is no causation.

Moreover, there are no cognizable damages. Plaintiff has offered no evidence that any additional sums were collectible from Nelson which could have been seized to satisfy Robinson's claim. For instance, he does not allege that the FDIC, or any other creditor of Nelson, was able to collect additional sums as a result of the dismissal of Robinson's lawsuit. It is insufficient for the plaintiff to allege that, had the alleged conflict of interest been disclosed, he would have hired another attorney because there is no allegation that the result would have been any different. Accordingly, for all of the articulated reasons, plaintiff's motion for leave to amend will be denied.

### ORDER

In accordance with the foregoing, plaintiff's motion for leave to amend (Docket No. 38) is **DENIED**.

**So ordered.**